UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>MARY MUSSO,<br><br>Defendant(s). | 2:12-CR-273 JCM (VCF) |

**ORDER**

Presently before the court is defendant Mary Musso's motion for district judge to reconsider the magistrate judge's order. (Doc. # 33). The government has filed a response (doc. # 37) to which the defendant has replied (doc. # 40).

**I.  Background**[1]

On July 25, 2012, Musso was indicted on five counts of wire fraud in connection with a "tenant improvement scheme" (counts one and two) and a "forged deeds of trust scheme" (counts three through five). (*See* indictment, doc. # 1).

Musso thereafter filed a motion to sever counts one and two from three through five. (Doc. # 26). Magistrate Judge Ferenbach denied that motion, holding that the counts as alleged in the indictment share the same character and were therefore properly joined under Fed. R. Crim. P. 8. (Doc. # 29). The instant motion seeks reconsideration of that order.

---

[1] In her motion, Musso concedes that "the salient facts of the case are mainly agreed upon for purposes of [the] motion." (Doc. # 33, p. 1). The relevant background facts and procedural history as outlined in the magistrate judge's order (doc. # 29) are therefore restated herein and adopted to the extent they are unobjected to.

**James C. Mahan**
**U.S. District Judge**

### A. Tenant improvement scheme

The indictment alleges that the tenant improvement scheme occurred in Las Vegas, Nevada between March 2007 and May 29, 2008. In early March 2007, Musso allegedly contacted victims "D.R." and "J.S." and represented that another individual, "J.M.", was interested in leasing two commercial properties owned by D.R. and J.S. On March 21, 2007, and March 30, 2007, Musso allegedly forged J.M.'s signature on leases for both properties, and soon thereafter forged J.M.'s signature on a contract between D.R., J.S., and J.M. for tenant improvements to those properties.

In reliance on the contract, on May 4, 2007, J.S. and D.R. transferred approximately $1,200,000.00 to a bank account controlled by Musso for improvements on the first property. Within days, Musso allegedly transferred $250,000.00, $44,000.00, $127,000.00, and $250,000.00 to various other accounts in an attempt to launder the money. On May 10, 2007, J.S. and D.R. made a second transfer of approximately $450,00.00 for improvements on the second property. Musso, again, allegedly laundered the funds.

In mid-July 2007, D.R. demanded that J.M. and Musso return a portion of the funds. In an attempt to induce D.R. to withdraw his demand, on July 26, 2007, Musso allegedly fabricated an email from J.M. to Musso, which stated that the funds could not be returned because doing so would breach a sub-lease. The e-mail also implied that the funds were still available in the account to which D.R. and J.S. had transferred them into on May 4, 2007. This e-mail serves as the basis of the government's first wire fraud count in the indictment.

Approximately two weeks later, on August 16, 2007, Musso allegedly fabricated a second email. The second e-mail, which purported to be from J.M., was sent to J.S. and represented that Musso pleaded with J.M. for J.M. to release the funds back to D.R. and J.S. This email serves as the basis for the government's second count of wire fraud.

### B. Forged deeds of trust scheme

As outlined by the Government's indictment, the forged deeds of trust scheme occurred in Las Vegas, Nevada between July 2010 and September 1, 2010. In July 2010—again posing as J.M.'s agent—Musso allegedly sent an e-mail to "hard money" lenders to inquire about obtaining a loan

1  secured by real property owned by J.M.  Through a series of fraudulent e-mails and email accounts,
2  Musso allegedly induced the lenders to agree to lend money to J.M.

3  Between August 17, 2010, and August 20, 2010, the lenders transferred funds to an account
4  controlled by Musso and recorded a deed of trust and a promissory note securing the property owned
5  by J.M., despite the fact that J.M. had no knowledge of the transaction and never gave Musso
6  permission to encumber the property.  Like the tenant improvement scheme, Musso allegedly
7  laundered the funds as soon as they were within her possession.  This transaction serves as the basis
8  for the government's third count of wire fraud.

9  Between August 24, 2010, and August 26, 2010, Musso allegedly did it again.  Posing as
10 J.M.'s agent, Musso caused the lenders to record a second Deed of Trust and a Promissory Note
11 against a second piece of property owned by J.M.  Again, J.M. had no knowledge of the transaction
12 and never gave Musso permission to encumber the property. This transaction serves as the basis for
13 the government's fourth count of wire fraud.

14 On August 27, 2010, Musso caused money related to the August 24–26 fraud to be
15 transferred into her attorney's client-trust account.  Musso allegedly controlled this account.  The
16 funds were allegedly used to pay off a criminal restitution order against Musso in Clark County
17 District Court.  This transaction serves as the basis for the government's fifth count of wire fraud.

18 **II.   Legal standard**

19 A district judge "may reconsider any pretrial matter [adjudicated by the magistrate judge] .
20 . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."
21 28 U.S.C. § 636(b)(1)(A); LR IB 3-1(a). The district judge may "affirm, reverse or modify, in whole
22 or in part, the ruling made by the magistrate judge."  LR IB 3-1(b). Under the "clearly erroneous"
23 standard, the magistrate judge's ruling must be accepted unless, after a review of the record, the court
24 is "left with the definite and firm conviction that a mistake has been committed." *United States v.*
25 *Silverman*, 861 F.2d 571, 576-77 (9th Cir.1998).

26 . . .
27 . . .
28

James C. Mahan
U.S. District Judge

- 3 -

### III. Discussion

Musso objects on two grounds. First, she argues that the government has not shown that the counts may be properly joined under Federal Rule of Criminal Procedure 8(a). Second, she contends that the magistrate judge did not conduct an analysis of severance under Rule 14(a).

*A. Rule 8(a)*

Two offenses may be joined in an indictment if "the offenses charged. . .are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Only one of Rule 8's criterion need be satisfied for proper joinder. *United States v. Jawara*, 474 F.3d 565, 573 (9th Cir. 2006).

When assessing whether the offenses are of the same or similar character, it is "appropriate to consider factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims." *Id.* at 578.

First, each count in both transactions allege Musso committed wire fraud, therefore the statutory elements are identical.

Second, this district routinely hears large-scale mortgage fraud cases where the fraudulent acts took place over the course of several years and involved tens or even hundreds of separate properties. Musso's arguments that the acts were not temporally proximate because they occurred two years apart are unpersuasive. As the properties involved in each count are both located in Las Vegas, and the relevant fraudulent conduct likewise occurred in Las Vegas, her arguments regarding the "physical location of the acts" are similarly unpersuasive.

Third, Musso's fraudulent use of J.M.'s identity is central to both series of transactions. As such, it appears the modus operandi underlying both counts is the same or substantially similar.

Based on these facts, the court finds that the magistrate's conclusion that the offenses are of the same or similar character is not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A);

1  LR IB 3-1(a).² Moreover, because the use of J.M.'s identity was central to each fraudulent act, it
2  would be fair to say that the two "constitute parts of a common scheme or plan" to utilize J.M.'s
3  identity to fraudulently induce payments, and would there be properly joined under Rule 8(a) for that
4  additional reason.

6      *B.    Rule 14(a)*

8      Even if multiple counts may be properly joined under Rule 8(a), the court may order
9  severance if "the joinder of offenses or defendants in an indictment, an information, or a
10 consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a).
11 In order to obtain relief from joinder, a defendant must show that joinder is "so
12 manifestly prejudicial that it outweighed the dominant concern with judicial economy and
13 compelled exercise of the court's discretion to sever." *United States v. Armstrong*, 621 F.2d 951,
14 954 (9th Cir. 1980).
15     Musso asserts that the joinder prejudices her for three reasons. First, she alleges that "this
16 is a technical case and could easily be confused by a jury of laymen." Musso provides no support
17 other than the bare assertion that the magistrate judge and the government "confused salient facts
18 of the case." Musso has not specified why she believes this is a "technical case," and the court's own
19 reading of the indictment reveals that it is sufficiently straightforward.
20     Second, Musso alleges she would not be able to exercise her right to testify because she
21 would be forced to choose between testifying as to both schemes or testifying to neither. The
22 calculated decision whether to take the stand to offer testimony on one's behalf weighed against the
23 risk of exposing oneself to an undesirable cross-examination is not unique to Musso. It is every
24 defendant's dream to be able to testify selectively; the fact that Musso would prefer to do just that
25 does not establish that joinder manifestly prejudices her or prohibits her from exercising her Fifth

---

² Although the magistrate judge misinterpreted *Jawara*'s discussion of temporal proximity, the court finds that err to be immaterial to its conclusion.

**James C. Mahan**
**U.S. District Judge**

- 5 -

Amendment rights.

Third, Musso alleges she would be subjected to the possibility that a jury would conclude that, because she committed one crime, she must have also committed the other. Musso's arguments in support of this contention relate to the admissibility of certain information at trial under the rules of evidence. Her complaints regarding the entry of certain evidence at trial may be properly addressed through motions *in limine* or objections at trial, and are not sufficient justifications for severance.[3]

**IV.   Conclusion**

For the reasons discussed herein, the court concludes that the counts as alleged in the indictment are properly joined. Further, Musso has failed to demonstrate that their joinder would prejudice her to a degree sufficient to warrant severance.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to reconsider (doc. # 33) be, and the same hereby is, DENIED.

DATED May 27, 2014.

                                     /s/ James C. Mahan
**UNITED STATES DISTRICT JUDGE**

---

[3] Musso also alleges that it would be "impossible" to avoid prejudice because the indictment will be read to the jury. As the government points out, Musso is within her rights to waive the reading of the indictment.

**James C. Mahan**
**U.S. District Judge**

- 6 -